Walker. Third case, Houston Specialty v. Meadows West. Mr. Johnson, we're ready when you are. May it please the court. I represent Houston Specialty Insurance Company. All right now, you got to give us your theater voice. You know, you kind of big there to have that little soft voice there. So now I'm, my hearing is, anyway, give us your. I will speak. That's being voiced. This is a coverage appeal dealing with a fire that originated at the Meadows complex. They have 18 buildings. The fire originated out of one building and my client paid for the fire damage to the building that had the fire. After that, the insured wanted us to pay for the reconfiguration of duct work that came off of a heater unit in the other 17 buildings that didn't have any fire damage. We. But the policy defines building as buildings and other structures at the insured location. Doesn't that sort of do you in? Your Honor, I believe the policy defines property as including multiple buildings, but. Building, yeah. I think, I don't think the policy defined the term building. You sure? Well. Well, anyway, that's a reference to multiple buildings on the location. So that's what they're relying on to have you repair all of the other faulty duct work. Correct. They're wanting us to repair all the other faulty duct work in the other 17 buildings that didn't have the fire damage. So as the insured, they have the burden of proof to come forward and prove coverage. And so the first place we turn is to the general coverage clause of the policy. And it may be easier for the court to follow my argument. I don't know if you have the record excerpts in front of you, but it would be on page 43 of the record excerpts. Also, it says that the company will pay for direct physical loss or damage to covered property caused by or resulting from a covered cause of loss, i.e. a fire. So generally, we only have to pay for loss from a covered cause of loss. So a fire. Here, the 17 buildings didn't have any fire. So the reconfiguration of the duct work doesn't fall under this general provision. So that's why Meadows has to rely upon a different provision, the ordinance or law clause. What an ordinance or law clause generally is, is oftentimes you have buildings that are current codes and standards. And they don't have to necessarily comply with all those current codes and standards. But if you build something new, you do. Or oftentimes, if you do a substantial repair, then you do have to bring it up to code. And so what an ordinance or law provision does is determine when the insurer is responsible for paying the added expense to repair, redesign, and demolish due to the application of a law and ordinance. So the only way they fit under this law and ordinance provision is if they can prove, and they check the box on all these various terms. And once again, on page 48 of the record excerpts talks about the law and ordinance provision. If you have our brief in front of you, it's on page 9 to 10 of our brief, if that's easier for your honors to find it. It says that a covered cause of loss occurs to covered property. I'm sorry, if a covered cause of loss occurs to covered property, the company will pay for the loss to the undamaged portion of a covered building caused by the enforcement of any ordinance or law. So the first thing is, was there loss to an undamaged portion of a covered building? And that means if you have undamaged portion, a portion means less than the whole. So you have to have a damaged portion to have an undamaged portion. And here, all of the 17 buildings that they're seeking compensation for didn't have any damage to them. The next thing is that the law and ordinance must require the demolition of parts of the same property not damaged by a covered cause of loss. So does the law and ordinance require demolition? And so that gets us to... Well, they threatened to turn off the electricity, the power, if they didn't make the repairs, correct? The building inspector, Mr. Manuel, sent a letter saying if you don't make these repairs, then we'll turn the electricity off by September, I believe. So that's not demolition, but it would surely shut them down. That is what the public official said in his discretionary act, and yes, presumably you wouldn't want to live in a condo that didn't have electricity. That's kind of common sense. So I agree with Your Honor on that. But the point is, does the ordinance or law require demolition as opposed to just a discretionary call by a governmental official? Because that's what the policy requires. And here, the term require means to make it necessary. Demolish means to destroy or forcefully tear down. And so what does the provision of the ordinance require? The ordinance, the only ordinance that the trial court or opposing counsel have cited is section 116 of the 2009 International Building Code. And it's on page 12 of our brief, if you want to look at the language of that. It's entitled, Unsafe Structures and Equipment. And it states, the structures or existing equipment that are or hereafter become, quote, unsafe. So the public means of egress facilities, inadequate light and ventilation, or which constitute a fire hazard, once again, what becomes a fire hazard or not is discretionary, or otherwise dangerous to human life or public welfare or involve illegal or improper occupancy or inadequate maintenance, that shall be deemed to be an unsafe condition. Okay, so if I, at my discretion, determine this to be unsafe, it becomes an unsafe condition. Then what happens? Unsafe structures shall then be taken down and removed or made safe. So as a public official, I can say, yes, this is so bad, you have to destroy it. Or I can say, or I can do something else to make it safe. Like, for example, you have to clean out the duct work on an annual basis. Doesn't require any demolition whatsoever. That's another choice the public official could have made under this particular ordinance. So that gets us back to, once again, it requires that the ordinance or law require demolition. This provision does not require demolition. Because of that, the damage to the 17 buildings isn't covered under this law and ordinance provision. The next requirement under that law and ordinance provision gets to, does the law and ordinance, let's say it does require demolition, then does the law and ordinance regulate the construction or repair of buildings or establishes zoning or land use requirements? So what kind of law and ordinance provision is it? Well, obviously this doesn't deal with zoning or land use, so we can kind of knock those out. Does it regulate construction or repair of buildings? It does not. It deals with something that has already been constructed. It doesn't necessarily have any damage to it. Someone else may have a procedural device that allows a building officer of the city to come in and say, that's unsafe, you have to fix it. But it doesn't necessarily mean that you have to construct it this way, or if you're going to repair it, you have to repair it this way. So what does it do? Okay, if it's not about construction and it's not about repair, what is it? To me, it's a statute or an ordinance about use. How do you use this property? If it's unsafe to use it, then I can make you fix it or make it safe or make you tear it down. So to me, it is a use kind of ordinance. And the reason I bring that up is if there is, in addition to the law and ordinance coverage paragraph, at the end of the policy and under the exclusions, there is a law and ordinance exclusion in this same policy. And it can be found on page 52 of the record excerpts. And typically, you will find in policies, property policies, you'll find a law and ordinance exclusion. And then usually the insurer has to pay for an endorsement to bring it back in. Okay, so that's kind of what they did here. So we kind of have, but you have to read them together. And that's insurance and contract laws. You have to read all provisions together. And a law and ordinance exception says that the insurer doesn't have to pay for any loss relating to the enforcement of any ordinance or law regulating the construction, use, or repair of any property, except as provided in the coverage paragraph. So it excludes laws that regulate construction, use, and repair. You go back to the coverage paragraph, and it says construction and repair. It doesn't say use. So if it regulates use, you don't get coverage. And so respectfully, section 116 deals with use, not construction and repair. So it doesn't meet this other requirement of the law and ordinance provision. There is, setting that aside. What if it's a repair? I'm sorry, ma'am. What if it's a repair and not use? It's a repair, because he said you must repair this. I mean, I'm just does that, what happens then? Well, you know, once again, it gets back to the ordinance or law, not what the official is saying. I mean, because the policy didn't say we'll cover anything, any discretionary decision of a public official. It could have said that. That would have been much, much broader than what the actual provision says. The actual provision says, does the law and ordinance require this? And the law and ordinance doesn't require that. And also, does the law and ordinance regulate use or regulate, I'm sorry, does it regulate construction and repair? And I don't think that provision does regulate construction and repair. It's something else. Because for example, this isn't really, in my opinion, this is an equipment problem. This is a heater unit that has ductwork attached to the heater unit. And so the fire starts in the ductwork that's right next to the heater unit, because there were several turns and the way it was constructed and it allowed dust and debris to collect in the ductwork. When the heater unit is turned on in December, in January, you have a fire. In fact, this was the sixth fire. From 1997 to 2012, there were six fires in this complex. And every single one of them started the exact same way. And every single one of them started because the heater unit was turned on. And so the building official comes out and says, look, this isn't safe. What was interesting is the two years before this, on the fifth fire, they looked at this, said it was an unsafe condition, said you need to maintain this, you need to clean this out, and told them that. Well, apparently they didn't do that. And another fire happened. So then the building official says, you know, well, you didn't clean it out, so I'm going to have to make you replace all of it. With each of the fires, was there a claim made? I don't know, because I don't think, it's not in the record, I don't think my insurance company insured them during those other time periods. So this is, although we know about the other six, five fires, but your policy or your company was only triggered in this one, is that right? Correct, Your Honor. Okay, all right. Now, alternatively, even if the court were to find that law and ordinance does apply to give them coverage. Did you insure them back then? I'm sorry, Your Honor. You didn't insure them back at all? I don't think so. The record's not clear, and it doesn't indicate that we did. Kind of an interesting underwriting question to me of, you know, insuring them in the face of, you know, five previous fires, yada, yada, yada. But anyway, that's neither here nor there. Keep going. Thank you. Alternatively, even if the law and ordinance does apply, there is an exclusion that applies here. And there's an exclusion that excludes any loss related to a defective design, specification, workmanship, repair, construction, materials, or maintenance. So if a loss originates from a defective or inadequate design or inadequate maintenance, we don't have to pay for that claim. But isn't that sort of an open question? Whether it is? Well, in my opinion, it is not an open question. Yeah, because you won. Well, alternatively, it's at least a fact question. I think that the evidence proves that it was inadequate design and inadequate maintenance as a matter of law. But there's no evidence that says it was adequate. And so I think at the end of the day, if the court determines that maybe there's a fact question, then that should be reversed and remanded. And we've asked that in the alternative. And so if you go through the exclusion, which is on page 55 of the record excerpts, page 10 through 11 of our brief, it clearly says the company will not pay for loss or damage created by inadequate design maintenance. There's an exception to that. It says, but if the event of an excluded cause of loss results in a covered cause of loss, this exclusion does not apply to loss or damage caused by that resulting covered cause of loss. What that means is if inadequate design or maintenance causes a fire, a covered cause of loss, then the insurer is responsible to pay for the fire damage. But here, there was no fire in these other 17 buildings. So the exception isn't triggered with regard to these other 17 buildings. In fact, we did pay them. We paid them to repair the building that had the fire in it. And that's not a part of this case. And it has never been. It was on both of our pleadings. So we did pay them for that. We haven't paid them for the other 17 buildings because there was no covered cause of loss. And importantly, actually, there was an exception to the exception. And it says the company will not pay for any cost incurred to tear down, tear out, repair, or replace any part of any property to correct the fault, inadequacy, or defect. So technically, we weren't liable to pay for the cost to redo the ductwork in the building that had the fire, only the fire damage. And I know insurance companies love to parse things. But yeah, there's a difference between repairing the roof and the fire damage from actually replacing the ductwork. Now, we did pay for that. But we didn't have to under the policy for here. But it's clear we don't have to pay. It makes no sense that you wouldn't have to pay for that. Well, that's what the policy provides. In other words, we don't have to pay for the defective ductwork. But if the defective ductwork causes a cause of loss, then we have to pay for the other damage. All right, Mr. Johnson, you've got a red light. Well, I'm done. All right. Okay. Well, you've saved some rebuttal time to come back up. Thank you, Your Honor. All right. Let's hear from Mr. Dyerian. Are there fact issues here, counsel? Is this really a summer judgment? May it please the court, counsel. My name is John Irie, and I represent the appellees in Meadow West. We've got a condominium complex in north side of Lafayette with 18 buildings and about 160 condo units. And we're here about the coverage issue. And the judge just mentioned, is this a fact issue? No, it's not a fact issue. And the reason why is because we can all look at this insurance policy. We can read it. The parties have fixed the record. That may have been a little premature, maybe. But we decided to do it the way we did it. And we didn't do depositions. We didn't get expert reports. We just submitted the letters, the emails that we got in the case. And I believe this was a very unique, odd case that we thought, let's let the judge decide. And we filed cross motions. And, you know, I'm going to kind of start from the back side because one thing that happened in the case was we filed cross motions. And while in my motion I didn't ask for a decision on the exclusion case, in their motion they did ask for it. And so they raised the issue. In hindsight, obviously I should have asked. And I don't know why I didn't. But I think that even though I didn't raise the issue in my motion, but they did raise the issue in their motion. And so the judge looked at the evidence again. As counsel, it's our obligation to submit whatever we have. They submitted what they had on the defect issue. And the judge said, it's not enough. It says you're a burden to prove the exclusion. It's not enough. They complained. Well, but the other side didn't ask for you to decide the issue. Well, I don't think it matters because you asked to decide the issue. You have to give notice that you're going to grant summary judgment for one side on something that's not moved for. We were both moving. But they weren't moving on that. They were. They were moving. They were moving on it for them, but you weren't moving on it. So they didn't realize that they could get summary judgment against them on the point. I was moving for coverage, and the exclusion was in a defense against coverage. So the judge grants me coverage, and part of granting me coverage was denying the exclusion. Why should you send it back to be fixed? Because I don't think anything would change. If you send it back, I'm filing a motion for summary judgment again, and Judge Hike presumably is going to grant it. I don't know that for a change. I don't know. Maybe it will, but I don't know what's going to change or what's different if we go back and do it. The whole point of this was to get it in front of the judge and resolve this issue, and obviously both parties didn't want to put any more money into it as far as depositions and a lot of discovery. We kind of felt like, hey, let's just let the court decide it on what we have, and so that was a decision that we both made, and I think in the end it may have hit them a little bit, but they could have said, no, if they had not raised the issue in their summary judgment, I agree with you, Judge, that there would be no notice, and Judge Hike could not have ruled on the exclusion issue if they had not raised it. Let me ask you a question about the facts. Did your client notify the insurance company that these other repairs are going to be made to these other buildings? In other words, you know, like if you fix something at your house, the insurance man has to come out and inspect and say, oh, no, do this, do that. Did they notify the carrier to come out and inspect? Well, okay, before the fire or after? You're talking about after? Of course not before the fire. Before the fire. No, not before the fire, after the fire. I'm not talking about the building that had the fire. I'm talking about all the other duct work that you replaced in all the other buildings. Did you call them in and say, hey, we're going to replace all of this, we think it's covered under the policy, and then they said no and you did it anyway? That's correct, and you made a good point earlier that they were turning off our power, and so we had to do it. We couldn't wait around for the insurance company. So I started sort of on the backside of my argument with the issue about the summary judgment because the judge mentioned, hey, is this about facts? That part, I think, of the case is about facts, the exclusion. The insurance coverage, the law and order and its provision, whether it applies or not, isn't as much about the facts, although we ended up arguing about some of the interpretations of some of the letters, but the first part that he brought up that I think I would definitely want to address, and I'm trying not to repeat a lot of the descriptions of this provision, but one thing he suggested was, look, you had 18 buildings. There was only a damage to one of the buildings, and the provision says under F1, again, he quoted where it is, but this is the ordinance or law provision, and it says if a covered cause of loss occurs to covered property, the company will pay for, and then under that, loss to the undamaged portion of a covered building. Now, he's taking that language and isolating it and saying, oh, look, you just had that loss, that fire just happened in one building, and so we don't have to cover the other 17, so apparently they're agreeing to do the retrofit on the one building where the fire did occur, but apparently they don't have to do the 17. This kind of fights against the whole policy. First, there's no specification in here that we can only have one building in our property, and in fact, in page two of the policy, it's under the property coverage form. Judge Clement pointed it out. It actually says building, and then it says in parentheses an S, and then it just goes on to describe what does building mean. Building means all of the buildings and structures at the insured location, so I think this is a singular versus plural issue. I don't think that the provision here meant to say, hey, we're only going to cover one building. It just said we're going to cover loss to the building, the covered building. It wasn't saying if you have more than one building, we will cover those also, and also under that 1A, it says when you look at what the law requires, it says it requires the demolition of parts of the same property not damaged by covered cause of loss, so what is the same property not damaged? It's by the cause of loss. The fire only happened in one building, so obviously the same property, it's the other 17 buildings, so the law that was being enforced by the city of Lafayette required the demolition of parts. Now, let's go to that issue, demolition. Now, what was being demolished? The flexible duct work that the building official, they investigated, they deemed that the flexible duct work was unsafe, it potentially was causing these fires, and you got to remove it, and you got to put something else in there, and they said put in rigid duct work, so what did we have to tear out? What did we have to demolish? We had to demolition, and specifically, the ordinance says, let's see, that real quick here, the ordinance specifically talks about, okay, in section 116.1, it says after the building official deems necessary, something to be unsafe, an unsafe condition, unsafe structures shall be taken down and removed, so what was taken down and removed? It was the flexible duct work, so we have, that's the demolition, that is the ordinance required that we remove that flexible duct work, so that satisfies the issue of the demolition. I think that, I don't, now, I think the meat of the issue on the law provision, at least that's what I always thought the meat of it was, was does the ordinance regulate the construction or repair buildings, because clearly we have an ordinance that's different here. It's not, doesn't say in the ordinance, you can't use flexible duct work. Clearly, there's not a specification in the ordinance, so now the question, does the ordinance law provision require that type of specification in the ordinance? The first argument I have is, look, the ordinance that was being applied was the whole building code. That was the 2009 international building code that was adopted by the city of Lafayette in 2011, so the ordinance that's being enforced is a building code. It's not just this one section of it, you know, and so my argument, obviously, is it's a building code. Of course it regulates construction and repair, so you've got that argument, but I still say that even if you go down to the actual part of the building code they're trying to enforce, the 116, I believe those sections do regulate construction and repair, because if you look at section 116.1, well, no, better than that, 116.3 notice, so after the building official deems that a structure is unsafe, he's going to give written notice telling the property owner the condition is deemed unsafe and specifies the required repairs or improvements to be made to abate the unsafe condition, so it's dealing with the repair of a building, and that is how you get to the point that this ordinance or law, even though we're talking about the whole building code, but even the section 116 does regulate repair. It just doesn't tell you exactly what you have to do in that ordinance to fix it, and I think that would be crazy if, what, we're going to write ordinance and laws that are going to imagine all the I think that that's why we have these type of general ordinances, so that we can be flexible when something comes up, because I think if you look at the facts of the case, it's obvious, well, maybe it's not real obvious, but it appears that they were unsure about what was going on over here. There had been five fires and it wasn't until, five, six, six, there wasn't until like the fire investigators looking at it going, something's going on over here. I'm not sure exactly what it is, but the the duck work may be contributing to the fire. I think it's important to say he said may. He didn't know for sure, but he had a suspicion. But I'm sorry, that gets me to the exclusion issue. Sure, sure, sure. I mean, if you had enough time to talk about the first part of the case, can we talk about the exclusion? We can, we can, and if I feel like I can go back, I can go back, but the I think the only other fact issue, why isn't there a fact issue on the exclusion? Okay, why shouldn't you remand it? Remand, not because of procedural irregularity, but actually because there's a fact issue. Okay, because I think the best way, the Houston Specialty chose to put that issue in front of you, in front of the judge, and they said we're going with these, the emails, the investigators report, we're going with these letters. They don't have to prove it as a matter of law if they're responding to your summary judgment. That's what you're saying, and you're saying, in other words, if I had filed a motion for summary judgment, could they have said, hey, there's an issue of fact, there's an issue of fact. Well, I guess, I guess the issue, I guess the issue of fact potentially is, is the flexible ductwork configuration defective? Is it involved or designed inappropriately? Yeah, right. Both of that comes under the exclusion. Right, but let's say, but if we try the case, they still have to prove the exclusion, so when they go to motion for summary judgment level, I think what Judge Hike was trying to say they had to prove that exclusion, and he found that what was in front of him didn't prove it. It wasn't sufficient. Maybe that's the, that's the problem. Because he didn't decide it, because you didn't file a summary judgment, and this wasn't the normal procedure, the district court required them to establish as a matter of law that it was installation or design, and they wouldn't have that burden if they were really ruling on this summary judgment motion that you were bringing. They would just have lost their motion. They wouldn't have lost the whole case. And so, for them, so it seems like there's a fact issue that they may not be able to win on, and you may be able to file a motion that's cleaned up and show that they can't win or something, and that there's not really a fact issue, but right now, it seems like there's a fact issue to me, so you need to help me see that there's not. Okay, and the way I see it is that how is anything we've done up until now going to change if we go back and argue is there an issue of fact? Because we've both sides, again, chosen to present the evidence that you have in front of you, and so the question is, okay, is that as a matter of law sufficient to prove you're entitled? And that would be a part of the summary judgment issue, because what you're saying is— Well, maybe nobody's entitled to summary judgment. Maybe it has to be tried. And you're right, Your Honor. It may be, and the question then is, if this is all the evidence you have, then I would have granted this motion for summary judgment as a matter of law. That's what Judge Hike, I think, was saying, was that if this is what you're giving me, you're apparently saying I don't need to give you anything more. Some facts are so obvious. I mean, it's almost you take judicial notice of the fact that if five or six air conditioning vents caught on fire within X number of years, and they were all constructed the same way, that's defective. Well, you know, I mean, nobody said that. Well, why do you need to go back? I understand, and I understand. So what you're saying is that if it looks like an issue of fact, but we decide to put it in front of the court and say this is all we got, can the judge then make a decision, well, look, if this is all you got, then the question is, did Houston Specialty, the insurance company, prove its burden? Because they've got the burden to prove the exclusion. I don't. You said you presented the case that way more as a matter of expediency to get it up before the court, which expediency isn't always, you know, the best measure for the resolution. And we see it before, the lawyers agree, so let's toss it up there, let the judge decide. Well, you know, that's good, but if the decision is questionable or otherwise, you know, it's just like lawyers saying what the standard review. Well, we hornbook all the court sets the standard review. So just because the lawyers postulated for convenience doesn't necessarily mean once you get to this level that that really divides. I mean, maybe it's still at the end could be, you know, side prevails, but those are the questions that kind of permeate. And maybe you got to take some depositions. And to be candid with you, the way the case came to this point, I think, surprised all of us. So I certainly wasn't clear to me that the judge was going to rule that way. I'm obviously glad he did, and so I'm here arguing that he's right. But I definitely was a little surprised, and the phone call to the client was really nice. But, you know, I think, and so I'm here hoping you say, hey, look, that's what the insurance company decided to go with. Shame on them for not taking some depositions. I think that we appreciate more than candor. I mean, it just, it rises to the top. Well, I appreciate it. And I think we, this was an odd case. It was a very, the weirdest case I've probably ever had that wasn't, you know, life-threatening or nobody's, you know what I'm saying. But anyway, we . . . You know when Judge Hike is leaving the bench? Pretty soon. I think this case drove him to it. He didn't want to talk to us about it at all. We didn't get any oral argument from him. And everything we got was an email, and I don't think he wanted anything to do with us. I don't know why, but I know Judge Hike, and I don't know. He's, I don't know when he's going to retire, but hopefully, if you do decide to remain, do it quickly, and let's get back down there so he can . . . So you can win again? Yeah. Do you have a stipulation or something that this is a closed universe of the facts? No. Because if they're bound, then they can't win. I mean, I agree with you, and I think he might agree that if this is the closed universe, he can't satisfy his burden at trial. But if they're allowed to open it up and bring in experts and all that stuff, then . . . Yeah, I mean, then no. There was no stipulation that this is all it is. It really just . . . It fell that way. They filed for it. I didn't. And maybe when I initially filed for it, I thought it was kind of an issue of fact, but then I looked at it and said, hey, well, I'm convinced. Apparently, there's not a . . . I don't think it's a question of . . . I think it's an issue of fact. The question is whether or not there was enough dispute or there was a sufficient . . . Could they prove their burden? And what you're indicating is, hey, maybe they can go back now, make some depositions, get some experts, and I'm hoping we don't have to do all that. And so that's where I'm at. So unless you guys have any more questions, Your Honors, I'll go ahead and conference attorney to try to discuss settlement. I love that. I think that they were . . . Nobody's pointing fingers, but they did initially ask us about that, and they chose not to. I think it was kind of . . . Maybe because of the way the case is, it's kind of an up or down. It's not one of the cases where you get to argue, hey, maybe your damages aren't that much. We had a bill for the retrofit, and it wasn't really negotiable. We didn't have a choice. So that may be what's forcing us here a little bit more. And the fact that we didn't take a whole bunch of depositions, and we didn't spend a whole lot of money on it. Maybe that's why we're here, too. All right. Let's see what Mr. Johnson has to say about that issue. Thank you. Thank you, Your Honor. I'm sorry. Judge Clement, did you have a settlement conference? Yeah. If we could send this case to our conference attorney to help you all negotiate a settlement, because it's only going to get worse from here on out, time-wise, money-wise. Yes, ma'am. I'm the appellate lawyer. I haven't actually communicated with the client about that issue. It did arise, and there was communications made, and there was a decision made to not go through that at the time. My own personal opinion is there's never any harm in personal opinion. Why don't you talk to him and let us know. I will do that. Send a letter to the clerk, Casey. Yes, ma'am. I will do that. Okay. Thank you. Getting to, I mean, all of Your Honors have asked, you know, is there a fact issue here? And, you know, obviously, I feel very strongly in the law and ordinance provision, but alternative arguments on the exclusion. And if we haven't proven it as a matter of law through the facts, underlying facts, and the governmental documents, then there is at least a fact question. And, I mean, if you look at the fire report that talks about the causation of this fire, and, in fact, their own sworn documents say, yes, the fire started in this, you know, heater in the duck work. Then you had fire investigator Alton Trahan's report that was done in an email, and he goes through and talks about the previous five fires from 97 through 2010, and said that all started the same way. But I'm not sure that this is a res-ipsa kind of thing, that you can do that. So it may not be enough. Well, I think the law. So you're just saying it's enough for a fact issue? It's at least enough for a fact issue. Yes, Your Honor. Because you don't need expert testimony in Louisiana to prove a design defect. And here, in addition to a design defect, you really do have a maintenance defect. I don't think these fires would have started if they'd gone in and vacuumed out the duck work and taken the dust and debris out, which is what they asked them to do in 2010. But some of these statements are kind of equivocal. They're not, this is the deal. They're kind of hedgy. I can see that. I mean, once again, these are governmental documents. It wasn't a deposition, you know. But in it, you do have the chief fire chief saying that the design was faulty. And you do have the building supervisor saying the design causes excessive heat to ignite the dust particles. Well, that's, there's a dispute on whether the fire chief is saying the design is faulty, or whether he's saying something else. The code is, the sentence is ambiguous, isn't it? I don't think it's ambiguous. Well, I'm just, didn't they argue that? They did argue that, yes. So that's not even clear that he said that about the design. I will admit they have a different interpretation of it. In my opinion, I don't think it's ambiguous. I think he's clearly saying the design is faulty. But I think what your Honor's getting at is that there's at least a fact question. I mean, and I think Judge Clement said, look, can't we take judicial notice that you've had six fires in 12 years, and they all start the exact same way? Isn't that kind of evidence in and of itself? And I think you can look at the facts to determine whether something's inadequate. We don't have to necessarily remember the policy says defective or inadequate. And so, I mean, I think there's certainly enough to prove there's an inadequate design, or inadequate maintenance, where you have fire after fire after fire after fire after fire. It makes you wonder why they didn't bring this up But that's not my job to make that determination. So once again, Your Honors, my clients feel that the law and ordinance provision does apply. It applies to show that they do not have coverage under the law and ordinance provision, and so this Court should reverse and render for my client. Alternatively, under the exclusion, this Court should reverse and render or reverse and remand if it determines there is a fact question. And so we'd ask for that relief, so either we win, or we go back to the trial court. And I think Justice Elrod was exactly right. There's a whole lot more that could be done here. We did not agree. This isn't a summary proceeding of stipulated facts. This is just, we both took a shot at a summary judgment, and there's a whole lot more that could be done. Well, it's a dollars and cents case, and you know, obviously coming to Fifth Circuit, you know, the meter's running, cash register anyway. And if you go back, you know, you got to do what you didn't want to do, blah, blah, blah. I would only say, in regard to Judge Clement's question to you, maybe while you're in the building, the conference attorney's office is right around the hallway. You might at least stick your head in there while you're here, as opposed to going back to your office to call them and all that, just to, you know, know where it is and maybe see or do whatever you can do, if you can, while you're here. It's probably not going to take long, and get some sense of it. If not, fine, we'll do what we do, but it's just before you leave the building. I mean, they're just right around the corner, as opposed to going back to email them and call them and all that, and see. I don't think I asked. What's the dollar amount? Refresh my partners in Houston as soon as it's over with, and we will get on the ball to get you an answer on that. Yeah, if you can. I mean, we're not ordering you to settle it. If you can't sell it, fine, but it is a dollars and cents case, so not a whole lot of principles involved here. You know, you got a policy, yada, yada, but, you know, it's kind of to your client. But if not, you know, we'll do what we do best. We'll decide the case. All right? All right. Thank you, both counsel. In this